GEORGE D. WICK, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 9514. Promulgated September 16, 1946.

*G. W. Smith, Esq.*, for the petitioner.
*Homer F. Benson, Esq.*, for the respondent.

OPINION.

HARRON, *Judge*: During the period July 7 to December 31, 1942, petitioner and his wife were voluntarily separated, and the payments which petitioner made to his wife for her support, aggregating $2,-712.83, were made under an oral agreement. During this period, his wife was not legally separated or divorced from petitioner under a decree of separate maintenance or under a decree of divorce. There-fore, the payments made in 1942 were not payments which Margaret Wick was required to report in her gross income under section 22 (k) of the Internal Revenue Code. It follows that petitioner is not en-titled to any deduction from his income for 1942 under section 23 (u). It is so held. See *Charles L. Brown*, 7 T. C. 715, and *Frank J. Kalch-thaler*, 7 T. C. 625.

The above holding applies equally to payments made to Margaret Wick during 1943, aggregating $2,298.42.

There remains the question whether payments made as alimony *pendente lite* for the support of Margaret Wick, which were made pursuant to the court order of July 20, 1943, are deductible from peti-tioner's 1943 income. The total amount of these payments was $3,108.78.

Respondent contends that since no decree of divorce was entered until January 22, 1944, the payments of "temporary alimony" were not deductible under section 23 (u). He relies upon section 22 (k) ; T. D. 5425; and Regulations 111, Supplement, section 29.22 (k). In that regulation an example is given, which is set forth in the margin.[1]

---

[1] EXAMPLE (1). W sues H for divorce in 1942. The court awards W temporary alimony of $25 a week pending the final decree. On September 1, 1942, the court grants W a divorce and awards her $200 a month permanent alimony. No part of the $25 a week temporary alimony received prior to the decree is includible in W's income under section 22 (k), but the $200 a month received during the balance of 1942 by W is includible in her income for 1942. Under section 23 (u), H is entitled to deduct such $200 payments from his income.

Petitioner contends, under this part of the general issue, that the Court of Common Pleas, by its order of July 20, 1943, recognized the existence of the separation, and that the payments of alimony *pendente lite* were made pursuant to a decree of separate maintenance within the meaning of section 22 (k). Petitioner regards the entire sum of $3,108.78, including fees and costs, as "alimony," or payments received by the wife subsequent to a "decree of separate maintenance." Petitioner does not cite any cases or authorities to support his argument other than section 22 (k), and a special ruling of the Treasury Department, dated December 8, 1944, which he cites for a statement which describes the nature of "alimony." See C. C. H. Federal Tax Reporter, 1945, vol. 4, par. 6092.[2]

The claim of petitioner for a deduction under section 23 (u) depends upon whether payments of alimony *pendente lite* come within section 22 (k), so as to be includible in the gross income of petitioner's wife during 1943.

Section 22 (k) reads, in part, as follows:

(k) ALIMONY, ETC., INCOME.—In the case of a wife who is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, periodic payments (whether or not made at regular intervals) received subsequent to such decree in discharge of, or attributable to property transferred (in trust or otherwise) in discharge of, a legal obligation which, because of the marital or family relationship, is imposed upon or incurred by such husband under such decree or under a written instrument incident to such divorce or separation shall be includible in the gross income of such wife, and such amounts received as are attributable to property so transferred shall not be includible in the gross income of such husband.

Petitioner's contention must be rejected. Of course, the order to pay alimony *pendente lite* was not a decree of separate maintenance, as that phrase is used in section 22 (k); and it was not, in its legal effect, a decree of legal separation. The meaning of "alimony *pendente lite*" is well understood in law, and in modern times the courts, in their discretion, have granted such allowance, depending on the need of the petitioner, for the purpose of enabling her (or him) to prosecute a suit for divorce. *Gundry* v. *Gundry* (Okla.), 68 Pac. 509, 510; *Westerfield* v. *Westerfield*, 36 N. J. Eq. 195, 197. See Words and Phrases, definition and discussion of Alimony Pendente Lite.

Under Pennsylvania statutes and decisions, alimony *pendente lite* begins when the order is granted and continues until final decree; *Coolidge* v. *Coolidge*, 18 Phila. 295; 43 L. I. 37. It is limited to the pendency of a suit for divorce, and it ends when the case ends. Purdon's Penna. Stat. Ann., Title 23, par. 46, note 6.

---

[2] The special ruling referred to above is not in point in any respect. It relates to amounts received under a decree of a court in connection with the annulment of a marriage.

In *Charles L. Brown, supra,* we pointed out that the Congress did not intend to include under section 22 (k) payments made during "any legal separation," but intended to include only payments made where a separation of the spouses had been consummated "under a decree * * * of separate maintenance."

And so, in this case, while the separation of the spouses in 1943, at the time a suit for divorce was pending, may have been a legal separation by voluntary consent and agreement of the spouses, it had not yet been consummated under a decree of separate maintenance. The latter phrase has the same meaning as a decree of separation. In Pennsylvania, a divorce *a mensa et thoro,* as distinguished from a divorce *a vinculo,* is regarded as legal separation. Hence, the decree entered on January 22, 1944, granting petitioner's wife a divorce *a mensa et thoro,* is the decree which would be regarded as "a decree * * * of separate maintenance," if we were considering payments by petitioner after January 22, 1944, made under such decree.

Accordingly, during 1943 the wife of petitioner was not legally separated from him "under a decree * * * of separate maintenance." She was not in the class described in section 22 (k) at any time in 1943, either after or before the order to petitioner to pay alimony *pendente lite* was made on July 20, 1943. The situation here resembles that in the case of *Charles L. Brown, supra,* despite some differences in the facts. Petitioner was still obligated to support his wife, no decree of divorce of any kind having been entered, by virtue of his obligations under his marriage contract.

Section 22 (k) relates to "alimony." From a careful reading of the language it is apparent that the Congress did not intend to include under this section any payment which may be called "alimony." The payments involved here were "alimony *pendente lite,*" but such payments are not provided for nor described in section 22 (k). They were payments pending a suit for a divorce. The section refers to "payments * * * received *subsequent to such decree* [decree of divorce or of separate maintenance]." (Italics added.)

It is held that the payments of alimony *pendente lite* in 1943 were not payments which petitioner's wife was required to include in her gross income under section 22 (k), and that petitioner is not entitled to deduct the sum of $3,108.78 under section 23 (u). Respondent's determination is sustained.

While the entire issue presented is decided in the respondent's favor, recomputations are required under Rule 50 because of stipulations filed.

*Decision will be entered under. Rule 50.*