Richard C. **RICHARDSON**, Petitioner,

v.

**COMMISSIONER OF INTERNAL REVENUE**, Respondent.

No. 7144.

United States Court of Appeals Fourth Circuit.

Argued April 13, 1956.

Decided May 22, 1956.

Sam B. Witt, Jr., and George W. Reilly, Richmond, Va., for petitioner.

Helen A. Buckley, Atty., Department of Justice, Washington, D. C. (Charles K. Rice, Asst. Atty. Gen., and Lee A. Jackson, Atty., Department of Justice, Washington, D. C., on brief), for respondent.

Before SOPER and DOBIE, Circuit Judges, and PAUL, District Judge.

PAUL, District Judge.

The statutory provisions pertinent to this case are sections 22(k), 23(u) and 23(a) (2) of the Internal Revenue Code of 1939, as follows:

"§ 22. Gross Income. * * *

"(k) Alimony, etc., income. In the case of a wife who is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, periodic payments (whether or not made at regular intervals) received subsequently to such decree in discharge of, or attributable to property transferred (in trust or otherwise) in discharge of, a legal obligation which, because of the marital or family relationship, is imposed upon or incurred by such husband under such decree or under a written instrument incident to such divorce or separation shall be includible in the gross income of such wife, and such amounts received as are attributable to property so transferred shall not be includible in the gross income of such husband. * * *" 26 U.S.C. 1946 ed., § 22(k).

"§ 23. Deductions from gross income.

"In computing net income there shall be allowed as deductions: * * *

"(u) Alimony, Etc., Payments. In the case of a husband described in section 22(k), amounts includible under section 22(k) in the gross income of his wife, payment of which is made within the husband's taxable year. If the amount of any such payment is, under section 22 (k) or section 171, stated to be not includible in such husband's gross income, no deduction shall be allowed with respect to such payment under this subsection." 26 U.S.C. 1946 ed., § 23(u).

"§ 23. Deductions from Gross Income. * * *

"(a) Expenses.
* * * * * *

"(2) Non-trade or non-business expenses. In the case of an individual, all the ordinary and necessary expenses paid or incurred during the taxable year for the production or collection of income, or for the management, conservation, or maintenance of property held for the production of income."

It will be noted that Sec. 22(k) provides that the wife shall include in her income payments made to her by the husband under certain conditions while Sec. 23(u) allows the husband to deduct from his income such payments as are described in Sec. 22(k).

Sec. 23(a) (2) provides for deductions to be allowed a taxpayer for expenses incurred in protecting income-producing property.

The controversy is over certain amounts which the petitioner claims he was entitled, by virtue of the above statutes, to deduct from his gross income for the years 1949 and 1950. The Commissioner of Internal Revenue disallowed these deductions and assessed deficiencies against petitioner in the amount of $3,026.89 and $5,437.03 for the taxable years 1949 and 1950 respectively. The deficiency assessments were upheld by the Tax Court in proceedings before that body and this is an appeal from that decision.

The facts are not in dispute and so far as pertinent are substantially as follows:

The taxpayer was married in August, 1943, to Doris Catherine Clark. No children have been born of this marriage. In June, 1946, Doris Catherine Richardson filed her bill of complaint against the taxpayer in the Chancery Court of the City of Richmond, alleging that the taxpayer had, without justification, deserted her in August, 1945, and had thereafter refused further cohabitation and all conjugal relations with her. The bill prayed that the defendant be required to pay to the complainant and her counsel such sums by way of alimony, *pendente lite*, suit money and preliminary counsel fees as to the court might

seem proper; and further prayed "that the court may *at the proper time* (emphasis added) require the defendant to pay the complainant by way of permanent alimony for her support and maintenance" such sums as the court might determine to be adequate for complainant's needs. The bill further prayed that the taxpayer be restrained from disposing of any of his property during the pendency of the suit.

Before any final disposition of this suit the taxpayer and his wife became reconciled in January, 1947, and lived together until June, 1947, when there was another separation. In November, 1948, the wife filed a supplemental bill in the suit which was still pending in the Chancery Court, in which, after reciting various prior events including the brief reconciliation, she alleged that the taxpayer had again deserted her on June 7, 1947, and had avowed his intention of no longer living with her. The prayer of this supplemental bill is substantially the same as that of the original bill, namely, that the court award her such sums for alimony *pendente lite*, suit money and preliminary counsel fees as the court might think proper; and that at the proper time the taxpayer be required to pay her such sums by way of permanent alimony for her support and maintenance as the court should determine to be reasonable; and that the taxpayer be enjoined from disposing of any of his property during pendency of the suit.

To this supplemental bill the taxpayer filed a plea in abatement. On February 9, 1949, the cause came on to be heard in the Chancery Court upon the plea in abatement and the motion of the defendant to dismiss the supplemental bill. As a result of this hearing the court, by a decree entered February 17, 1949, ordered the plea in abatement stricken, denied the motion to dismiss the bill, and ordered the taxpayer to pay his wife as alimony *pendente lite*, until further order of the court, the sum of $250.00 a month beginning as of February 1, 1949, and to forthwith pay to the complainant the

sum of $500.00 to be applied by her on account of attorney's fees. The decree then provided that the defendant should have thirty days in which to answer or otherwise plead to the bill and supplemental bill of complaint.

Pursuant to this decree of February 17, 1949, the taxpayer paid to his wife in 1949 $2,750.00 in monthly payments of $250.00 each and $500.00 for her attorney's fees. By a decree entered July 24, 1950, the court made a further allowance of $1,000.00 to be paid by the taxpayer to his wife's attorneys. In the same decree he set the case to be heard on its merits on October 23, 1950. The taxpayer paid to his wife during 1950 the sum of $2,500.00 alimony, representing monthly payments of $250.00 each through October; and paid the additional $1,000.00 for her attorney's fees.

After the case had come on to be heard on its merits in October, 1950, the Chancery Court, on October 25, 1950, delivered an opinion in which, after reciting the facts disclosed at the hearing, stated that the taxpayer had deserted his wife without just cause and that "the judgment of the court is that the wife, under the circumstances disclosed in the evidence, is entitled to a separate maintenance." This opinion of the court was followed by a formal decree dated October 28, 1950, entitled "Decree Awarding Separate Maintenance", which, after reciting that the cause had come on to be heard upon the pleadings and upon the testimony of various witnesses, and after adjudging the marriage of the parties, the desertion by the husband, and the lack of any fault on the part of the wife, provided:

"That the defendant shall, therefore, pay to the complainant a separate maintenance in the monthly sum of Two Hundred and Fifty Dollars ($250.00), the first payment to be made on the first day of November, 1950, and on the first day of each and every month thereafter until further order of the Court in this cause or until the death of either of the parties."

The decree further provided that the defendant should pay the complainant a balance of $87.28 for suit money and expenses, and should pay the further sum of $1,500.00 to the wife's attorneys for their services. The decree closed with the recitation that nothing further remained to be done and that accordingly the cause was stricken from the docket, with leave to either party to have it reinstated for good cause shown.

The taxpayer claimed as deductions in his returns for the year 1949 and for 1950 the amounts of $5,226.20 and $8,681.28 respectively. These sums covered the amounts he had paid to his wife and to her attorneys under the orders of the court during these years and included also the amount paid by him to his own attorneys and court costs paid by him. The Commissioner allowed the deduction of $500.00 representing the monthly payments of $250.00 each for separate maintenance paid in November and December, 1950, following the final decree of the Chancery Court of October 28, 1950, and as provided therein. He disallowed the balance of the claimed deductions in compiling the deficiency assessment.

In argument the petitioner stresses the fact that the suit instituted by the taxpayer's wife in the Chancery Court of Richmond was not a statutory proceeding for divorce but was a common law suit in equity for separate maintenance. There is no doubt that in Virginia there is a recognized jurisdiction in courts of equity to entertain suits for separate maintenance on behalf of a deserted wife even though no divorce is sought. This has long been established. See Almond v. Almond, 1826, 4 Rand. 662, 25 Va. 662; Latham v. Latham, 30 Gratt. 307, 338, 71 Va. 307; Heflin v. Heflin, 177 Va. 385, 395, 14 S.E.2d 317, 141 A.L.R. 391, reviewing the history of this jurisdiction and the cases upholding it; White v. White, 181 Va. 162, 168, 24 S.E.2d 448. There is also no doubt that the wife's suit against the petitioner was a suit of this nature. But just what results favorable to him flow from that fact the petitioner does not make clear.

The attempt to differentiate the nature of a divorce suit from that of one for separate maintenance appears to us of little or no significance here. Actually, except that one is statutory and the other exists independent of statute, the main difference is in the *extent* of the remedy sought. If a deserted wife seeks to require her husband to support her, but for some reason does not desire a divorce, she may resort to a suit for separate maintenance. If she desires to go further and dissolve the marital bond she sues for divorce with the accompanying remedy of alimony for her separate support. The later cases in Virginia indicate the view that a wife is entitled to separate maintenance only in those cases where the conduct of the husband is such as would entitle her to a divorce had she chosen to seek one. See Williams v. Williams, 188 Va. 543, 550, 50 S.E.2d 277. This is recognized in the brief filed by petitioner in this case where, in discussing the allowance of separate maintenance to a wife in a suit for that purpose only, it is said: "But the Court must first find that the separation is the result of a breach of the marital duty by the husband sufficient to entitle her to a divorce."

Again in petitioner's brief we find this statement:

"The Supreme Court of Appeals has maintained scrupulously the requirement that before any allowance can be made, as a necessary condition for the allowance, in fact, as its basis, the original separation of the parties must be examined carefully to determine that the departure of the wife from the common domicile was for cause recognized by Virginia law as a legal right to separation, and the court must as a basis for its allowance find and adjudicate that the wife is within her legal right in continuing the separated status before decreeing payments for separate maintenance."

In the light of these admissions it is difficult to understand upon what basis petitioner rests his contention that he is

entitled to the deductions in his tax returns which were disallowed. The mere filing of a suit for separate maintenance does not fix the right to it. In suits of this nature, as in all others of which we have knowledge, the complaining party must establish by evidence her right to the relief she seeks. There was never an adjudication that this wife was entitled to separate maintenance until the decree of October 28, 1950. Nothing in any prior action of the court established her right to separate maintenance or imposed on the husband the obligation to pay it. The decree of the Chancery Court of February 17, 1949, merely directed that the husband pay to the wife certain amounts for her support pending the outcome of the litigation, and for the services of her attorneys. The entry of such decrees is an almost universal practice in suits by a wife whether for divorce or for separate maintenance. They are for the purpose of permitting the wife to live and have legal representation until the time when the court can adjudge the merits of her case. Their effect goes no further.

■ None of the decrees entered by the Chancery Court prior to that of October 28, 1950, made any reference to or use of the term "separate maintenance". The payments ordered to be made to the wife were for alimony *pendente lite*—a term which is defined as "pending the continuance of an action; while litigation continues." 2 Bouvier's Law Dict., Rawle's Third Revision, p. 2552. It was not until October 28, 1950, that the court passed upon the merits of the wife's claim and rendered its opinion and decree which for the first time adjudged that the wife was entitled to separate maintenance and ordered it paid. A reading of the statute, Secs. 22(k) and 23(u) of the Internal Revenue Code, hereinbefore quoted, makes it plain that the only payments made by the taxpayer to his wife which were deductible were those paid subsequent to the decree of October 28, 1950. The statute allows deductions for periodic payments made to a wife who is divorced or legally separated from her husband under a *decree* of divorce or of *separate maintenance,* and received by her *subsequent to such decree.* The Commissioner allowed deduction of the payments made to the wife for November and December, 1950, following, and in accordance with, the decree awarding her separate maintenance. We agree that the statute authorized no deductions for any sums paid prior to that time and that the Commissioner rightfully refused to allow them.

■ Aside from his claim regarding the amounts paid his wife, the petitioner seeks to deduct the amounts paid by him for court costs and for fees to his attorneys for their services to him in the wife's suit against him. He bases this claim on the fact that the bill of complaint filed by his wife in the Chancery Court, in addition to praying for the temporary and final relief set out therein, asked that the husband be enjoined from disposing of any of his property during the pendency of the suit. The taxpayer then invokes Sec. 23(a) (2) of the Internal Revenue Code (Set out in the opening of this opinion) which grants to an individual taxpayer a deduction from gross income of any expenses necessarily paid or incurred in the conservation or maintenance of property held for the production of income.

We are of opinion that the Tax Court correctly denied this claim. There are several reasons for this view. In the first place it may be said that the propriety of such an allowance seems doubtful in any case where the only effort by the complainant is to require that the husband's property be held intact pending the suit, but where no attack is made on the ownership of any of the property and no demand is asserted which jeopardizes in any way the husband's title to any of his property. But aside from this it is clear that the prayer of the bill that the husband be enjoined from disposing of his property was a mere formal request which was never pressed. An examination of the record shows that, aside from the bill of complaint, there is no reference whatever to this question at

any stage of the proceedings. The court never acted on it or mentioned it in any of its decrees. It is clear that the attorneys for the husband expended no effort in the conservation or maintenance of his property, as envisioned by the statute. The controversy between this husband and wife extended over several years. It included, besides the litigation herein discussed, a suit brought by the husband in another court in which he sought unsuccessfully to have his marriage to his wife declared void. The same attorneys represented him throughout. Their services were directed to preventing any liability being imposed upon the husband for his wife's support, and it is this for which they were paid. Another reason why the petitioner's claim would have to be rejected is the fact that even if any part of the fee paid by him to his attorneys could be said to be for services in conserving his property, no effort has been made to show what part of the sums paid should be allotted to that purpose. Certainly not all of the attorneys' services were such as contemplated by Sec. 23(a) (2), and unless and until it is shown what part of the sums paid them are applicable to that part of their efforts there is no basis upon which to grant a deduction.

The case of Baer v. Commissioner, 8 Cir., 196 F.2d 646, which petitioner cites in connection with this element of his claim, has little application here. In that case the wife, suing for divorce, demanded a property settlement in a lump sum of a very large amount. The court pointed out that this demand could not have been met by the husband except by a disposal of such a large part of his assets as to threaten a destruction of the business from which his income was derived. It was further noted that the husband had not contested the wife's right to a divorce and that there was little occasion for the services of his counsel in the divorce proceeding proper; and that the services of his attorneys had been largely devoted to protecting the husband's estate against the financial demands of the wife. In this case also there had

been a finding by the Tax Court as to what portion of the amount paid the attorneys was paid for services in connection with the divorce and what portion was for services in conserving the husband's property. None of the conditions which formed the basis for the decision in the Baer case exists in the case now before us.

The judgment of the Tax Court is affirmed.

Affirmed.