Forest R. Lemasters v. Commissioner.
Lemasters v. Commissioner
Docket No. 5930-68.
United States Tax Court
T.C. Memo 1971-47; 1971 Tax Ct. Memo LEXIS 285; 30 T.C.M. (CCH) 218; T.C.M. (RIA) 71047; March 16, 1971, Filed. F. Pen Cosby, for the petitioner. James J. McGrath, for the respondent. DAWSON
Memorandum Opinion DAWSON, Judge: Respondent determined the following deficiencies in petitioner's Federal income taxes: Year
Amount
1964
$4,592.60
1965
4,512.08
*286 Certain concessions have been made by the petitioner. The only question presented for decision is whether installment payments of a lump sum made by petitioner pursuant to a written separation agreement qualify as periodic payments deductible as alimony under section 215, Internal Revenue Code of 1954. [1]
All of the facts are stipulated and are found accordingly. To the extent deemed pertinent they are summarized below. Forest R. Lemasters (herein called petitioner) was a legal resident of Indianapolis, Indiana, at the time he filed his petition in this proceeding. He filed timely Federal income tax returns for the years 1964 and 1965 with the district director of internal revenue at Indianapolis. Petitioner and Myrtle M. Lemasters were married in 1924 and separated in 1950. On March 12, 1953, the petitioner and his wife, Myrtle M. Lemasters, executed a document entitled Post-Nuptial and Property Settlement Agreement Between Myrtle M. Lemasters and Forest R. Lemasters. The pertinent provisions of the agreement may be summarized as follows: *287 (a) That one-half of the net profits attributable to petitioner's interest in a certain business be paid to Myrtle M. Lemasters for the rest of her life. (b) That $125.00 per week for ten years from the date of the agreement be paid to Myrtle M. Lemasters as long as petitioner's salary remained at $1,000 per month, with reduction in salary effecting a similar reduction in required payments. (c) That title to jointly held residential real estate and furniture remain unchanged but that Myrtle M. Lemasters was to have its use and enjoyment for life. (d) That divorce was not to change the weekly payments of $125; that remarriage of Myrtle M. Lemasters would not terminate her right to receive the $125 weekly payments. (e) That reconciliation would terminate the entire agreement except that part 219 relating to Myrtle M. Lemasters' right to one-half of petitioner's share of net profits in the aforementioned business. While the agreement of March 12, 1953, was still in effect, the opportunity arose for the petitioner to sell his interest in the business. This opportunity resulted in a new agreement, dated February 27, 1964, the pertinent provisions of which may be summarized *288 as follows: (a) That Myrtle M. Lemasters would receive the lump sum of $80,000 payable in installments of $8,000 per year; that $8,000 would be payable in advance for the first year; that quarterly payments of $2,000 would be made on January 2, April 1, July 1, and October 1, of each succeeding year. (b) That residential real estate and furniture remained as property held by the entireties and that Myrtle M. Lemasters retained the right to use such property during the term of the contract. (c) That taxes, insurance, and maintenance expense be shared equally. (d) That Myrtle M. Lemasters would receive the proceeds and profits from crops on the real estate. A contract for the sale of the business and a promissory note were executed by the purchasers of the business, and such documents provided for the payment by the purchasers to Myrtle M. Lemasters in accordance with the provisions of the agreement of February 27, 1964. Myrtle Lemasters received a payment of $8,000 on or about June 30, 1964. Subsequently, quarterly payments of $2,000 were to be made on January 2, April 1, July 1, and October 1 of each year. Final payment would be made on October 1, 1973. Under the schedule *289 of specified payments, full payment will be made in less than ten years from the date of the agreement of February 27, 1964. Prior to 1964 and 1965 and since at least 1953, the petitioner filed joint Federal income tax returns with his wife, Myrtle M. Lemasters. In his notice of deficiency respondent determined that alimony deductions were not allowable in the years 1964 and 1965 in the respective amounts of $8,338.50 and $8,470.19. Of these amounts, the petitioner now concedes $338.50 and $470.19 in the respective years. Petitioner advances three arguments for the claimed alimony deductions: (1) That the agreement provides for periodic payments in excess of ten years, (2) that there was a change in the economic condition of the parties to the agreement, and (3) that there was a contingency of death. Respondent counters each of these arguments. Petitioner first asserts that the agreement of February 27, 1964, is a continuation of the agreement of March 12, 1953, and that by tacking the two agreements the 10-year requirement of section 71(c)(2) [2] is satisfied and the payments he made to Myrtle Lemasters are therefore deductible as alimony. We reject this "tacking" argument *290 for three reasons: 1. The agreement of February 27, 1964, is a substitution for the earlier agreement. Thus the agreement of February 27, 1964, must stand alone as a basis for the claimed alimony deductions. Estate of John M. Jarboe, 39 T.C. 690 (1963). 2. Section 71(c)(2) provides that in order for installment payments to qualify as a basis for alimony deductions, such payments must be made in satisfaction of a principal sum. The agreement of March 12, 1953, did not provide for the payment of a principal sum and therefore could not qualify under section 71(c)(2). John W. Furrow, Jr., 34 T.C. 931 (1960), affd. 292 F. 2d 604 (C.A. 10, 1961). 3. Section 71(a)(2) provides that periodic payments under a written separation agreement are includible in the wife's gross income unless the husband and wife filed joint returns. Here the petitioner and his wife filed joint Federal income tax returns for all years covered by the March 12, 1953, agreement. Thus, to allow "tacking" would validate years in which the agreement of March 12, 1953, would have been invalid under the provisions of the statute and the action of petitioner and his wife. *291 220 Accordingly, it is clear that the agreement of February 27, 1964, must qualify under section 71(c)(2). It does not qualify because, regardless of whether June 30, 1964, or February 27, 1964, is used to measure the 10-year period, final payment under that agreement would actually be made in. less than ten years. Next we turn to petitioner's contention concerning the contingency of a change in the economic condition of the parties. Section 1.71-1(d)(3)(i), Income Tax Regs., provides as follows: (3)(i) Where payments under a decree, instrument, or agreement are to be paid over a period ending 10 years or less from the date of such decree, instrument, or agreement, such payments are not installment payments discharging a part of an obligation the principal sum of which is, in terms of money or property, specified in the decree, instrument, or agreement (and are considered periodic payments for the purposes of section 71(a)) only if such payments meet the following two conditions: (a) Such payments are subject to any one or more of the contingencies of death of either spouse, remarriage of the wife, or change in the economic status of either spouse, and (b) Such payments *292 are in the nature of alimony or an allowance for support. We think there is no support for petitioner's argument since the agreement of February 27, 1964, did not contain any provision for alteration based on changes in economic condition. The annual payments of $8,000 were to be made regardless of the economic status of the petitioner or his wife. With respect to petitioner's last contention concerning the contingency of death, we note that paragraph 7 of the February 27, 1964, agreement provides, in part, as follows: and provided further, that if said husband should predecease the wife, at which time they are still husband and wife, the wife shall be entitled to her lawful rights of inheritance as his said wife as provided and existing under the laws of the State of Indiana at the time of this agreement; and provided further, that should the wife predecease the husband, at which time they are still husband and wife, the husband shall be entitled to his lawful rights of inheritance as her said husband as provided and existing under the laws of the State of Indiana at the time of this agreement. It is clear under other provisions of the agreement of February 27, 1964, and the *293 related sales agreement, that the payments to the wife were not contingent upon the death of petitioner. Similarly, the payments on behalf of petitioner by the purchaser of the business did not cease upon the death of the wife but, in that event, would be disposed of as part of her estate. Hence, there is no contingency as to the payments to be made, and under section 1.71-1(d)(3)(i)(a), Income Tax Regs., it is the payment which must be contingent, not the possibility of a substitute recipient. While the language in paragraph 7 of the agreement of February 27, 1964, may cause other problems, it has no bearing on the contingency of payment as required in the regulation. See section 1.71-1(d)(5), example (1). We agree with respondent that the payments to petitioner's wife are not contingent and do not qualify as "periodic" under section 1.71-1(d)(3)(i), Income Tax Regs. Accordingly, Decision will be entered for the respondent. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.↩
2. Section 71(c)(2) provides: (2) Where Period For Payment is More Than 10 Years. - If, by the terms of the decree, instrument, or agreement, the principal sum referred to in paragraph (1) is to be paid or may be paid over a period ending more than 10 years from the date of such decree, instrument, or agreement, then (notwithstanding paragraph (1)) the installment payments shall be treated as periodic payments for purposes of subsection (a), but (in the case of any one taxable year of the wife) only to the extent of 10 percent of the principal sum. For purposes of the preceding sentence, the part of any principal sum which is allocable to a period after the taxable year of the wife in which it is received shall be treated as an installment payment for the taxable year in which it is received.↩